IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KRYSTAL BELL**, as personal representative of
**JACOB ADAM MITSCHELEN**, deceased,

    Plaintiff,

v.                                          No.      11cv907 JCH/ACT

**BYRON "TREY" ECONOMIDY III**,
in his individual capacity, and
**CITY OF ALBUQUERQUE**,

    Defendants.

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO ANSWER AND RESPOND TO PLAINTIFF'S FIRST AND SECOND SETS
OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**

    Plaintiff Krystal Bell, through her attorneys of record, Kennedy & Han, P.C., hereby moves to compel Defendants to respond in a complete, accurate, and timely manner to Plaintiff's First and Second Sets of Interrogatories and Requests for Production on the following grounds.

**I.  BACKGROUND AND CERTIFICATION PURSUANT TO RULE 37(A)(1)**

    Several weeks after the deadline for answering Plaintiff's complaint and responding to Plaintiffs' motion to appoint a personal representative in this case, Judge Herrera issued a *sua sponte* order [Doc. 12] directing Defendants' counsel to file an answer and respond to the motion by no later than December 21, 2011. Judge Herrera's *sua sponte* order also directed "that Defendants meet all future deadlines in this matter unless proper action, compliant with Local and Federal Rules, is taken to extend the deadlines." [Doc. 12, at 2.]

    On April 18, 2012, Plaintiff served Defendant Economidy with a first set of interrogatories and requests for production. [Doc. 25.] Defense counsel responded with the City Legal Department's customary set of generic, boilerplate objections on May 21, 2012. [Doc.

26.] A copy of relevant portions of that response is attached hereto as **Exhibit 1** to this motion. On May 29, 2012, Plaintiff's counsel wrote a letter to Defendants' counsel responding to these blanket objections and requesting that Defendant Economidy supplement his answers and responses with respect to two categories of information: (a) his internal affairs/personnel files responsive to Plaintiff's Interrogatory No. 2 and Requests for Production No. 1 and 2; and (b) his Facebook page and Social Media postings responsive to Interrogatory No. 4 and Request for Production No. 4. A copy of counsel's letter of May 29, 2012, is attached hereto as **Exhibit 2**.

In that letter, Plaintiff's counsel also proposed a form of stipulated protective order to address Defendants' privacy concerns regarding the internal affairs/personnel files. Discussions pursuant to Plaintiff's counsel's letter of May 29, 2012, eventually resulted in the Stipulated Protective Order filed with the Court on June 19, 2012 [Doc. 30], and the concurrently filed order extending the deadline for Plaintiff to file a motion to compel regarding her first set of written discovery requests. [Doc. 29].

Meanwhile, Plaintiff served Defendants with a second set of interrogatories and requests for production on May 30, 2012. [Doc. 27.] Defendants did not respond to this second set of discovery requests within the 30-day period provided in Rules 33 and 34, nor did they ask for or obtain an extension of time to answer, respond, or object to these requests. In addition, Defendants did not timely produce any information pursuant to the Stipulated Protective Order.

Accordingly, Plaintiff's counsel sent a second letter to Defendants' counsel on July 16, 2012, advising that the time for filing objections had expired and that a motion to compel would be filed if Defendants did not remedy these omissions by July 19, 2012. A copy of counsel's letter of July 16, 2012, is attached hereto as **Exhibit 3** to this motion.

At the close of business on July 19, 2012, Defendants served untimely objections and

partial answers to Plaintiff's second set of interrogatories and requests for production. A copy of relevant portions of that document is attached hereto as **Exhibit 4**. Defendants' responses of July 19, 2012, included a copy of Defendant Economidy's employment application pursuant to the Stipulated Protective Order, and a copy of a report by the Police Executive Research Forum ("PERF") entitled "Review of Use of Force in the Albuquerque Police Department" (June 23, 2011). At the close of business on July 20, 2012, Defendants produced a copy of Defendant Economidy's Internal Affairs file pursuant to the Stipulated Protective Order. In addition, Defendants' counsel emailed an electronic version of the City's new social media policy and produced a copy of a "hotsheet" regarding Mr. Mitschelen that was issued by APD's Criminal Intelligence Unit on the same date that Defendant Economidy shot and killed Mr. Mitschelen.

In the answers and responses they served on July 19, 2012, Defendants objected to Plaintiff's Interrogatory No. 12, which asked them to identify additional records disseminated by APD's Special Investigations Division or Criminal Intelligence Unit, and Request for Production No. 15, which requested each record relating to Defendant Economidy which has previously been produced in discovery in *Wharton v. City of Albuquerque*, No. D202CV201006590 (2nd Jud. Dist. Ct. filed May 28, 2010). *Wharton* is another officer-involved shooting case which resulted from a pretextual traffic stop initiated by Defendant Economidy approximately a year before he shot and killed Mr. Mitschelen. A copy of the docket sheet in *Wharton* evincing the status of discovery motions in that case is attached hereto as **Exhibit 5**.

On July 25, 2012, Plaintiff's counsel sent an email message to opposing counsel identifying discovery issues that remain in dispute in the present case and providing one last opportunity to respond before this motion to compel was filed. A copy of that email message is attached hereto as **Exhibit 6**. Plaintiff's counsel did not receive a response and therefore

believes that such efforts at informal resolution have been exhausted with respect to the items at issue in this motion.  Based on the facts recited above, Plaintiff's counsel certifies pursuant to Fed. R. Civ. P. 37(a)(1) that they have conferred in good faith with counsel for Defendants in an effort to obtain the requested discovery without court action, and such efforts have significantly narrowed the issues in dispute.

While Plaintiff's counsel will continue efforts to informally resolve discovery disputes in the future, further delays in the disclosure of the requested information are so unfairly prejudicial to Plaintiff's case that Plaintiff must proceed with a motion to compel at this juncture.  In addition to depriving Plaintiff of information that is relevant and material to proving her claims at trial, the delayed disclosure of that information hampers Plaintiff's ability to prepare for the scheduled settlement conference in this matter, and to prepare for and schedule depositions within the case-management deadlines set by the Court.

## II.     ARGUMENT

### A.     Defendant Economidy's Facebook Page and Social Media Postings (Interrogatory No. 4 and RFP No. 4):

Plaintiff's Interrogatory No. 4 asked Defendant Economidy to identify, for the period from 2007 to the present, all online/internet social networks to which he belonged (and the names under which he held those accounts), all blogs or microblogs (*e.g.*, Twitter) he maintained or posted to (and the names under which he held those accounts), and all email accounts or addresses which he held or used.  Plaintiff's Request for Production No. 4 asked Defendant Economidy to produce the "postings, comments, photographs, chat communications, blog entries, or other information which is now, or has ever been, posted to, recorded on, or any way associated or linked with the social network accounts identified in your answer to Interrogatory

No. 4."  Defendant Economidy stated a blanket objection to this interrogatory and request for production "on the grounds that the information sought is overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence," and that "the interrogatory violates his right to privacy."  **Exhibit 1**, at 3-4, 7-8.

In a letter to opposing counsel dated May 29, 2012 (**Exhibit 2**), Plaintiff's counsel pointed out that such generic, boilerplate objections are not valid, *see DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008), and that a party responding to a discovery request that is objectionable in part nevertheless "has a duty to answer 'to the extent the interrogatory is not objectionable.'"  *Hiskette v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998) (quoting Fed. R. Civ. P. 33(b)); *accord Brenford Envt'l System, L.P. v. Pipeliners of Puerto Rico, Inc.*, 269 F.R.D. 143, 146-47 (D. Puerto Rico 2010) (citing Fed. R. Civ. P. 34(b)(2)(C)).  In that same letter, Plaintiff's counsel also attempted to answer Defendant Economidy's objections by offering to limit the above discovery requests by date (*i.e.*, from July 1, 2009, until the implementation of the City's new social-media policy on or about June 30, 2011), and by subject matter (*i.e.*, Facebook and other social-media postings which comment on or relate to his employment with the City of Albuquerque, including but not limited to his self-described occupation of "human waste disposal," and/or subjects which are now prohibited by the City's current social-media policy for law-enforcement officers).  *See* **Exhibit 2**, at 2.  As noted above, Plaintiff also entered into a stipulated protective order to address Defendant Economidy's expressed concern about his privacy.  [Doc. 30.]

The requested information is relevant to Plaintiff's claims in this case because it has already been widely publicized that Defendant Economidy had a Facebook page in which he listed his occupation as "human waste disposal," and the City's social-media policy was

5

developed at least partially in response to the publicity which directly followed the shooting in this case.  *See, e.g.*, Jeff Proctor, "Cop in Facebook Scandal Back on Street," *Albuquerque Journal*, Fri. May 6, 2011, at A1.  Under these circumstances, Plaintiff's counsel should be permitted to inquire not only about the previously publicized Facebook posting, but also about other, similar statements that Defendant Economidy made in his social-media postings.  Such statements documented on social-media sites are relevant because they set the context for the "human waste disposal" posting and may evince Defendant Economidy's planning and intent at the time of the shooting, as well as the credibility of his statements after the shooting, and Defendant City of Albuquerque's failure to properly train and supervise him.

Pursuant to the Stipulated Protective Order, Defendants have produced other documents which indirectly refer to some of Defendant Economidy's social-media postings, again underscoring their relevance to Plaintiff's claims in this case.[1]  But such indirect references to social-media postings in the documents produced under the Stipulated Protective Order are no substitute for direct and comprehensive answers to Plaintiff's Interrogatory No. 4 and Request for Production No. 4 from Defendant Economidy himself, especially given that he has failed to state a timely and specific objection to these discovery requests.

Plaintiff therefore respectfully requests that the Court compel Defendant Economidy to promptly answer and respond in a complete and accurate manner to Plaintiff's Interrogatory No. 4 and Request for Production No. 4, as limited by date and subject matter as provided in the letter from Plaintiff's counsel dated May 29, 2012.  To the extent that Defendant Economidy is

---

[1] The documents in question are not produced or identified as exhibits to this motion because the Stipulated Protective Order prohibits their disclosure.  Plaintiff can provide the documents to the Court in a sealed filing and requests leave to do so if the Court wishes to review them.

unable to identify or produce the records responsive to this request because he has irretrievably destroyed or deleted them, Plaintiffs' request that spoliation sanctions be imposed in this case, including but not limited to an instruction at trial advising jurors that they may draw adverse inferences from Defendant Economidy's destruction or deletion of this important evidence. *See 103 Investors I, L.P. v Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006).

### B.  Intelligence Briefings from APD's Special Investigations Division and Criminal Intelligence Unit (Interrogatory No. 12):

Plaintiff's Interrogatory No. 12 asked Defendants to identify each criminal intelligence report, hotsheet, officer safety bulletin, intelligence briefing, and other record generated by, or making reference to, the Albuquerque Police Department Special Investigations Division or Criminal Intelligence Unit that was sent to or received by Defendant Byron "Trey" Economidy III between December 1, 2009, and February 10, 2011. Defendants did not respond to this interrogatory within the thirty-day period allotted by Fed. R. Civ. P. 33(b)(2), and thus any objections were waived. *See Caudle v. Dist. of Columbia*, 263 F.R.D. 29, 32-33 (D.D.C. 2009); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526-32 (S.D. W. Va. 2007); *Essex Ins. Co. v. Neely*, 236 F.R.D. 287, 290-91 (N.D. W. Va. 2006); *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 665 (D. Kan. 2004); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496-97 (D. Kan. 2004). Plaintiff's counsel so advised opposing counsel in a letter dated July 16, 2012. *See* **Exhibit 3.**

Nevertheless, on July 19, 2012--a full 50 days after the interrogatory was served--Defendants answered with another generic, boilerplate objection stating that "the information sought is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence." **Exhibit 4**. For the reasons previously stated in Plaintiff's counsel's letter

of May 29, 2012 (**Exhibit 2**), such a generic, blanket objection to a discovery request would not be valid even if it were timely asserted (which it is not).  *See DL*, 251 F.R.D. at 43.

Moreover, the requested information is highly relevant to Plaintiff's claims against each Defendant in this case.  In response to Plaintiff's other discovery requests, Defendants produced a "hotsheet" from the Criminal Intelligence Unit of APD's Special Investigations Division entitled "Intelligence Briefing:  Mitschelen, Jacob Alan."  This hotsheet is dated February 9, 2011--the same date that Defendant Economidy shot and killed Mr. Mitschelen.  The hotsheet contains a detailed listing of Mr. Mitschelen's criminal history and falsely accuses him of being "associated with some type of white supremacist gang or organization."

Defendants also claim in their answers to interrogatories that this hotsheet which shares the same date as the shooting was not generated until *after* the shooting and was never distributed to Defendant Economidy.  They also claim that Defendant Economidy was merely on "random patrol" conducting a routine traffic stop before the shooting.

Those claims are hard to reconcile with the following facts.  First, Defendant Economidy is a member of APD's Gang Unit and was working in tandem with an undercover ATF agent on the night of the shooting.  With the ATF agent watching nearby in an unmarked vehicle, Defendant Economidy went directly to the vicinity of Mr. Mitschelen's residence at the beginning of his patrol that evening and followed Mr. Mitschelen's vehicle from the residence to a nearby grocery store.  Despite having Mr. Mitschelen's identification and paperwork while Mr. Mitschelen waited in his vehicle during the traffic stop that ensued in the parking lot in front of the grocery store, Defendant Economidy did not proceed to issue a traffic citation, nor did he engage in the standard officer-safety procedures that typically accompany the decision to place a suspect under arrest, such as calling for backup and having the suspect exit the vehicle to be

placed on the ground or in handcuffs.  Instead, Defendant Economidy continued to hold Mr. Mitschelen in his sights while the ATF agent maintained his cover in the distance, as if they were waiting for the situation to escalate in an as-yet undisclosed undercover operation.

This was not the first time in which Defendant Economidy had been involved in a pretextual traffic stop that led to an officer's fatal shooting of an individual whom APD's Special Investigations Unit wrongly believed to have some association with a white supremacist gang or organization.  A similar incident occurred approximately a year earlier when an APD officer fatally shot Kenneth Ellis III on January 13 2010.  The Ellis shooting is the subject of another wrongful-death lawsuit captioned *Wharton v. City of Albuquerque*, No. D202CV201006590 (2nd Jud. Dist. Ct. filed May 28, 2010).  The Ellis shooting also has been widely publicized and criticized in the media.  As in Mr. Mitschelen's case, reports have surfaced that APD's Criminal Intelligence Unit mistakenly thought Mr. Ellis was associated with a white supremacist criminal organization such as the "Aryan Brotherhood."  In the time period between the Ellis shooting and the Mitschelen shooting, it is reported that APD's Criminal Intelligence Unit widely distributed additional intelligence briefings to APD officers suggesting an inflammatory conspiracy theory according to which a white-supremacist organization had given orders to kill an APD officer in retaliation for the Ellis shooting and other incidents of excessive force by APD officers.  *See* Jeff Proctor, "Did Aryans Target APD?  Lawyers Say Police Overreacted to Sketchy Information," *Albuquerque Journal*, Sunday, June 17, 2012, at A1.

Under these circumstances, Plaintiff is not required to accept at face value Defendants' assertion that Defendant Economidy was just conducting a random traffic stop without any prior knowledge of the person he seized and fatally shot as a result of that stop.  The discovery rules permit Plaintiff to test Defendants' assertions by requiring Defendants to identify the relevant

intelligence briefings that Defendant Economidy might have received or sent during the period between the Ellis and the Mitschelen shooting.  This information is relevant because it bears on Defendant Economidy's state of mind at the time of the shooting, as well as the adequacy of the training and supervision that he received from Defendant City of Albuquerque.  If Defendant Economidy was encouraged to target Mr. Mitschelen in an aggressive and confrontational manner, and was acting on inflammatory rhetoric falsely accusing Mr. Mitschelen of being associated with a white-supremacist criminal organization that posed an ongoing threat to APD officers, then those facts would help support the inference that Defendant Economidy engaged in an excessive use of deadly force with a culpable state of mind, and that Defendant City of Albuquerque's efforts to train and supervise him were negligent (if not reckless).

For these reasons, there would be no valid basis for sustaining Defendants' objections to the relevance of Interrogatory No. 12 even if those objections had been timely and specifically asserted.  Given the lack of a timely, specific, and valid objection, the Court should compel Defendants to provide a complete and accurate answer to Plaintiff's Interrogatory No. 12.

    **C.**    **Records Relating to Defendant Economidy's Involvement in the Fatal Shooting of Kenneth Ellis on January 23, 2010 (RFP No. 15)**

Plaintiff's Request for Production No. 15 asked Defendants to produce each record relating to Defendant Economidy which has previously been produced in discovery in *Wharton v. City of Albuquerque*, D202CV201006590 (2nd Jud. Dist. Ct. filed May 28, 2010).  Defendants did not respond to this request for production within the thirty-day period allotted by Fed. R. Civ. P. 33(b)(2), and thus any objections were waived.  *See Caudle*, 263 F.R.D. at 32-33; *Frontier-Kemper Constructors, Inc.*, 246 F.R.D. at 526-32; *Essex Ins. Co.*, 236 F.R.D. at 290-91; *Swackhammer*, 225 F.R.D. at 665; *Starlight Int'l, Inc.*, 181 F.R.D. at 496-97.  Plaintiff's counsel

so advised opposing counsel in the letter dated July 16, 2012.  *See* **Exhibit 3.**

As in the case of Interrogatory No. 12 discussed above, Defendants did not respond to Request for Production No. 15 until July 19, 2012--a full 50 days after the request for production was served--and their response on that date consisted of yet another generic, boilerplate objection stating only that "the information sought is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence." **Exhibit 4**.  For the reasons previously stated, such a generic, blanket objection to a discovery request would not be valid even if it were timely asserted (which it is not).  *See DL*, 251 F.R.D. at 43.

Also for the reasons previously stated, the requested discovery relating to the *Wharton* case is highly relevant because the officer-involved shooting at issue in that case involved similar facts, occurred approximately a year before the shooting of Mr. Mitschelen, and also involved Defendant Economidy.  The records arising from the Ellis shooting are important to give context to, and set the stage for, Plaintiff's claims regarding the Mitschelen shooting.  *See generally Graham v. Connor*, 490 U.S. 386, 399 n.12 (1989) (noting that "evidence that the officer may have harbored ill-will toward the citizen" is relevant to prove an excessive-force claim); *see, e.g., Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (holding that evidence of an officer's prior acts may be admitted for purposes enumerated in Fed. R. Evid. 404(b) in an excessive-force case).  At the discovery stage, however, the question is not whether this line of evidence would be *admissible* at trial under the Federal Rules of Evidence, but only whether it could reasonably *lead to* the discovery of relevant evidence within the broad meaning of Federal Rule of Civil Procedure 26(b)(1).  *See, e.g., Doe v. Gill*, No. C 1-04759 CW (LB), 2012 WL 1038655, at *2-4 (N.D. Cal. 2012) (unpublished opinion collecting cases).  Plaintiff's discovery requests easily meet that standard.

For example, discovery of intelligence briefings asserting the conspiracy theory that white-supremacist organizations were aiming to retaliate against APD officers for the Ellis shooting, and that Mr. Mitschelen was associated in some way with those organizations, would be relevant to show Defendant Economidy's state of mind with respect to the Mitschelen shooting, as well as Defendant City of Albuquerque's failure to properly train and supervise him. On what grounds can Defendants object to the production of such information to the Plaintiff in this case when it has already been produced in discovery in the *Wharton* case and even reported in the media?

As shown by the docket sheet attached hereto as **Exhibit 5**, the City of Albuquerque's Legal Department has engaged in a similar pattern of discovery delays in *Wharton*, which have been the subject of numerous discovery motions in that case. By requesting that Defendants in the present case simply produce the records relating to Defendant Economidy that have already been produced in *Wharton*, Plaintiff seeks to avoid burdening this Court with the multiple rounds of discovery motions that have already been extensively litigated in that case. Why should this Court accept a repetition of the same dilatory discovery tactics from the City Legal Department in this case? The City has already been sanctioned for that approach in *Wharton*. Such behavior should not be further tolerated in this case, especially given the Court's *sua sponte* order admonishing Defendants' counsel that they must "meet all future deadlines in this matter unless proper action, compliant with Local and Federal Rules, is taken to extend the deadlines." [Doc. 12, at 2.] Despite this order, Defendants did not file objections in a timely manner or otherwise take proper action to extend the time for filing their discovery responses in this case. It follows that they have no valid, timely, and specific basis for failing to respond to Plaintiff's Request for Production No. 15. Such a response should be compelled at this point.

**III.     CONCLUSION**

The consequence of the City Legal Department's calculated course of action to avoid or delay discovery in this case should be to forfeit their opportunity to object to Plaintiff's discovery requests or delay their answers and responses any further.  Defendants should instead be compelled to respond in a complete and accurate manner to Plaintiff's Interrogatory No. 4, Request for Production No. 4, Interrogatory No. 12, and Request for Production No. 15.  In addition, Plaintiff should be awarded attorney fees and costs in preparing, filing, and briefing this motion to compel, in an amount to be determined after further briefing.

WHEREFORE Plaintiff respectfully requests that the Court find good cause to grant this motion and enter an order compelling Defendants to immediately answer and respond in a complete and accurate manner to Plaintiffs' First and Second Sets of Interrogatories and Requests for Production as set forth above, to award Plaintiff's fees and costs in bringing this motion, and to grant Plaintiff such further relief as the Court deems just and proper.

Respectfully Submitted by:

  /s/   Arne R. Leonard
Paul J. Kennedy
Darin M. Foster
Arne R. Leonard
Nicole W. Moss
KENNEDY & HAN, P.C.
201 12th Street NW
Albuquerque, New Mexico  87102
(505) 842-8662

ATTORNEYS FOR PLAINTIFF

I certify that a copy of the foregoing motion and exhibits were served via CM/ECF to the following counsel of record on this 27th day of July, 2012:

Kathryn C. Levy
Deputy City Attorney
City of Albuquerque Legal Dep't
P.O. Box 2248
Albuquerque, NM 87103-2248
(505) 768-4500

  /s/   Arne R. Leonard
Arne R. Leonard